## Case No. 17,353.

### WEEKS v. LYCOMING FIRE INS. CO.

[6 Reporter, 165; 7 Ins. Law J. 552; 26 Pittsb. Leg. J. 12.] [1]

Circuit Court, D. Vermont. Feb., 1878.

**AUTHORITY OF INSURANCE AGENTS—PRELIMINARY PAROL CONTRACT — ENFORCEMENT — WAIVER OF CONDITIONS.**

1. Where an insurance agent is furnished with blank policies which he is authorized to fill up and deliver and make binding until cancelled, his authority to make this larger completed contract includes an authority to make a preliminary executory contract to enter into it.

2. A parol agreement for insurance must include the subject of insurance, the time, amount, and premium.

3. Where under the circumstances the policy would have been binding, if one had issued, the agreement to insure will be binding.

4. Where a policy should have issued, pursuant to agreement, but was refused, such refusal is a waiver of the conditions in such policies requiring proof of loss within a certain time.

Bill to recover amount of loss by fire on a parol agreement by virtue of which a policy was to issue.

PER CURIAM. Several questions of fact and of law arising thereon have been made. One is as to whether the defendant's agent had authority to bind the defendant to an executory contract of insurance of the property. It is shown by the orators that the agent was furnished with blank policies, which he was authorized to fill up and deliver, and make

1 [Reprinted from 6 Reporter, 165, by permission. 26 Pittsb. Leg. J. 12, contains only a partial report.]

binding for their whole term unless the defendant's officers should determine to cancel them, and if so, until they should be cancelled. This would constitute an executed contract of insurance, which would include the preliminary executory contract to enter into it, and authority to make this larger completed contract would include authority to make the included one. Wood, Ins. § 10, and cases cited; Insurance Co. v. Colt, 20 Wall. [87 U. S.] 560; Sanborn v. Insurance Co., 16 Gray, 453. Thus it appears that he did have the requisite authority. Another and more difficult question is, whether he, as such agent, did in fact enter into such preliminary contract. It is so usual and so proper that contracts of insurance be in writing that proof of them by parol ought to be clear. And to make out such contract each essential element of it must be shown to exist. The agreement on the part of the insurer must be made out by proving what it was to cover, for what time, at what sum, and for what price or premium; that on the part of the insured by showing an agreement at least to pay the agreed price or premium for the agreed insurance. When made out, one agreement is the consideration for the other.

[In this case there is no question about what the property was to be insured. All agree as to that. As to the commencement and duration, Mr. Walker testifies that it was to commence at the expiration of the policy in the Hartford Fire Insurance Company, which was Nov. 20, 1874. Mr. Cahoon, that he was to have the property to insure from year to year; and Mr. Newell, that he was directed by Mr. Cahoon to write an application in the form of a daily report, and to follow another policy and a register, each of which showed insurance for one year, and all agree that this was to be a renewal in the Lycoming instead of the Hartford Company, of an insurance which was for one year.][2] And it appears the duration of the insurance was to be one year from November 20, 1874; that the amount of insurance was to be $3,333.33; the premium to be 1¾ per cent.; and that the report of the insurance was made and forwarded.

[Mr. Walker testifies that the price or premium was to be 1¾ per cent., and Mr. Cahoon that he made the premiums on insurance for the orators a matter of debt between him and them. Mr. Walker states what, if true, in connection with the Hartford policy, would cover the whole, when, after testifying to conversation on the subject between him and Mr. Cahoon on the last Monday in August or the first one in September, 1874, he says: "At this time it was agreed upon between me and Cahoon that the policy in the Hartford should be placed in the Lycoming at the expiration of the Hartford, and that the rate should be 1¾ per cent., instead of 1½ per cent., as we had paid before." This was objected to, and it is argued that it was not competent for the witness to state what was agreed to, but only

what was said, leaving the effect to be found on the trial, and Linsley v. Lovely, 26 Vt. 123, is cited. The testimony held inadmissible in that case was that of a witness who testified not only to what he, but what the other party to negotiations between them understood from them. As was said in that case, one person cannot state what another understands without drawing an inference, which is the province of the trier. But one person might hear another expressly agree. In this case, according to what was said by the court in that, Mr. Walker could state what he understood or agreed to; and what Mr. Cahoon understood and agreed to may be readily inferred from his testimony that he directed Mr. Newell, his clerk, to renew the Hartford policy in the Lycoming, and from Mr. Newell's testimony to the same effect. And if all of Newell's testimony is true, not only the agreement must have been made, but the daily report of the insurance made and forwarded. That of Mr. Francisco and Mr. Bradley is to the effect that it was not received, which, in connection with the known accuracy of the mails, tends to show it was not sent.][2] Whether this report was made and sent or not is not decisive, since the question is: whether the agreement to insure was made so that the report ought to have been made and sent and the policy written,—[and as to this testimony of the three witnesses concurs, and is not contradicted, but is strongly corroborated by the fact, shown by the policies issued as well as by the oral proof, that it was the arrangement between the insured and the insurance agent to keep $10,000 insurance on the property, and that this insurance was necessary to make up that amount.][2]

It is claimed for the defendant that various things shown by the evidence to have existed about the property affecting the risk would have invalidated the policy if one had been issued according to agreement, and that therefore they vitiate the agreement. On this point the evidence is full to the effect that the defendant's agent knew of all these things and entered into the agreement in view of them. The agreement was to insure the property as it was situated. Under these circumstances the policy would have been binding, and the agreement is. Wood, Ins. § 402, and cases cited; Brink v. Insurance Co. 49 Vt. 453. [It was objected that there was a limitation in the charter of the defendant that would have cut off this risk, but if there is, it is not shown.][2] If the policy had issued in the form contemplated, it would have required proof of loss within thirty days, which has not been made, and the want of it would have defeated recovery. But the policy was not issued, and when asked for was refused by the agent. The claim now made is not on the policy, but on the agreement for one not performed. The refusal of the policy was equivalent to a denial of all liability, made within the time in

[2] [From 7 Ins. Law J. 552.]

[2] [From 7 Ins. Law J. 552.]

which proof was required, and excused making such proof. Wood, Ins. § 419.

The orators are entitled to a decree for a policy, and the defendants to the amount of the premium not yet paid. As there has been a total loss of some of the property, and a partial loss of other of it sufficient to cover the whole amount, except that there was a special insurance on a piano, which was saved, so as to abate $50, to avoid circuity there should be a decree for the orators for the amount of $3,333.33, less the $50 abatement and the premium, $58.33. Decree accordingly.